UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LOUIS LAROCCA,

    Petitioner,

v.                                                                                   Case No. 8:21-cv-2248-WFJ-SPF

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Louis LaRocca, a Florida prisoner, timely filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent filed a response opposing the petition. (Doc. 12). Mr. LaRocca filed a reply. (Doc. 16). Upon consideration, the petition is **DENIED**.

**I.  Background**

In 2015, Mr. LaRocca was charged with one count of armed burglary, three counts of burglary, and two counts of grand theft. (Doc. 13-3, Ex. 2a, at 3-11). The charges stemmed from three separate residential burglaries. The victim of the first burglary was an 87-year-old woman who "live[d] at home alone with her dog." (Doc. 13-2, Ex. 1, at 60). A person came to the front door and distracted the victim by "talking about landscap[ing]." (*Id.*) Meanwhile, Mr. LaRocca entered the master bedroom through the "rear of the house" and stole "over $120,000 worth of jewelry." (*Id.* at 60-61). He left behind a hat with his DNA on it. (*Id.* at 61). During the second burglary, Mr. LaRocca entered the victim's house and stole between $10,000 and $20,000 worth of jewelry. (*Id.* at 59). His fingerprints were

1

"located on the exterior of the . . . entry door." (*Id.* at 59-60). Mr. LaRocca committed the third burglary by entering the house through a screened porch. (*Id.* at 59). Once inside, he stole jewelry, a shotgun, and a knife—all of which were subsequently "located in the woods with [Mr. LaRocca's] fingerprints" on them. (*Id.*)

In June 2016, Mr. LaRocca agreed to plead guilty to each offense. (*Id.* at 32-35). In exchange, the prosecution recommended concurrent sentences of twenty years' imprisonment for armed burglary and first-degree grand theft, fifteen years' imprisonment for simple burglary, and five years' imprisonment for third-degree grand theft. (*Id.* at 33, 56). The signed plea agreement reflected Mr. LaRocca's understanding that he was waiving several rights by pleading guilty, including the "right to a trial by jury," the "right to be represented by an attorney at every stage of the proceedings," the "right to confront and cross-examine witnesses at trial," and the "right not to testify or be compelled to incriminate [himself]." (*Id.* at 32). The agreement also noted that Mr. LaRocca faced a statutory "maximum sentence" of "life in prison with no parole." (*Id.*) Following a plea colloquy, the trial court found that Mr. LaRocca's "plea [was] freely, knowingly[,] and voluntarily entered," and sentenced him in accordance with the parties' agreement. (*Id.* at 61).

One month later, Mr. LaRocca filed a *pro se* motion to withdraw his plea. (*Id.* at 48-49). He argued that he had been "rushed to plead" by his counsel, who put "tremendous pressure" on him to accept the deal and gave him "less than 24 [hours]" to consider the offer. (*Id.* at 48). According to Mr. LaRocca, counsel told him he would "lose at trial and get 60 years," causing him to "feel [he] was in a no-win situation." (*Id.* at 49).

2

The court held a hearing on the motion. Counsel testified that he did not tell Mr. LaRocca he would "get 60 years" if he went to trial. (*Id.* at 140). Instead, counsel advised him that "he could get life in prison," the statutory maximum sentence for armed burglary. (*Id.*) Counsel also testified that (1) he spoke to Mr. LaRocca in person about the plea on June 22 and June 23, 2016, "and the plea was [accepted by the court on] June 27th"; (2) he advised Mr. LaRocca that "the deal was in his best interest" because "DNA evidence and fingerprint evidence [] put him inside homes to which he had never been given legal access," and thus he "would likely lose the trial"; and (3) Mr. LaRocca agreed that the plea "was in his best interest." (*Id.* at 141-42). At the conclusion of the hearing, the court orally denied the motion to withdraw the plea. (*Id.* at 148-50). Mr. LaRocca appealed, and the state appellate court affirmed without a written opinion. (Doc. 13-3, Ex. 2a, at 150).

One year later, Mr. LaRocca filed a petition alleging ineffective assistance of appellate counsel. (*Id.*, Ex. 2). He argued that counsel was deficient for failing to argue on direct appeal that "the trial court erred by not appointing counsel or conducting an inquiry pursuant to *Faretta v. California*, 422 U.S. 806 (1975), before ruling on his motion to withdraw his plea[]." (*Id.*, Ex. 5). The state appellate court granted the petition. (*Id.*) It reversed the order denying the motion to withdraw the plea and directed the trial court to "either appoint conflict-free counsel to 'advise and assist' Mr. LaRocca with his motion or conduct [a *Faretta*] inquiry." (*Id.* at 4).

Now represented by conflict-free counsel, Mr. LaRocca returned to the trial court for a second hearing on the motion to withdraw. (*Id.*, Ex. 7, at 56-57). Mr. LaRocca testified at the hearing that, once the prosecution had made its offer, his lawyer gave him two

3

choices: "[g]o to trial or take the 20 years." (*Id.* at 64). He also claimed that counsel never advised him that he "could reject the offer, plead no contest, and simply let the [c]ourt decide [his] sentence." (*Id.*) According to Mr. LaRocca, had counsel informed him of the possibility of an open plea, he would have chosen that option based on his "belie[f]" that he "would have got something better than 20 years." (*Id.*) Asked why he held that view, Mr. LaRocca responded, "Faith in God." (*Id.*) Although counsel testified at the hearing, he was not asked whether he had discussed the possibility of an open plea with Mr. LaRocca.

Following the evidentiary portion of the hearing, the court heard oral argument from the parties. Mr. LaRocca contended that his "plea was not knowingly made" because "he was not aware that he could reject the State's plea offer and throw himself at the mercy of the [c]ourt by entering an open no contest plea." (*Id.* at 93). He also claimed that, given his "lack of criminal history" and "the fact that [his minimum guidelines sentence was] approximately 11 years," it "would have been rational for [him] to have pled open." (*Id.*)

The court ultimately denied the motion to withdraw in a written order. Citing "the signed plea form, the [plea] colloquy," and "the testimony presented" at the latest evidentiary hearing, the court found that Mr. LaRocca had "failed to establish that his plea was involuntarily entered or that he suffered prejudice." (*Id.* at 46). The court explained that Mr. LaRocca "had four days in which to consider his plea, he expressed his satisfaction with counsel and no hesitation in entering the plea during the plea colloquy, the evidence against [him] was strong, and he received a 20-year sentence when he faced life in prison." (*Id.*) Mr. LaRocca appealed, and the state appellate court affirmed without a written opinion. (*Id.*, Ex. 12). This federal habeas petition followed. (Doc. 1).

4

## II.   Discussion

Mr. LaRocca raises a single ground for relief—that his plea was not "knowingly, intelligently, and voluntarily entered" because counsel "never advised him that he could reject the plea offer and enter" an open plea instead. (Doc. 2 at 4, 8). He claims that, because he was unaware of the possibility of pleading open, his negotiated plea "did not represent an intelligent choice among the alternative options available." (*Id.* at 8). Thus, according to Mr. LaRocca, the state court's rejection of his request to withdraw the plea was "both contrary to and an unreasonable application of clearly established federal law"— specifically, *Boykin v. Alabama*, 395 U.S. 238 (1969) and *North Carolina v. Alford*, 400 U.S. 25 (1970). (*Id.* at 9). Upon careful review, the Court concludes that Mr. LaRocca is not entitled to relief.[1]

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas relief only if the underlying state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "AEDPA's standard is intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015). "'[C]learly established Federal law' for purposes of § 2254(d)(1) includes only

---

[1] Respondent contends that the petition is unexhausted because Mr. LaRocca failed to alert the state courts to the federal nature of his claim. (Doc. 12 at 18). This argument lacks merit. Before the trial court, Mr. LaRocca argued (Doc. 13-3, Ex. 7, at 92) that his plea was involuntary under *McCarthy v. United States*, which stated that "a guilty plea" "has been obtained in violation of due process" if it "is not equally voluntary and knowing." 394 U.S. 459, 466 (1969). Likewise, on direct appeal, Mr. LaRocca cited federal precedent in support of the argument that his plea was involuntary and unknowing. (Doc. 13-3, Ex. 8, at 9-10). Thus, Mr. LaRocca made "the state court aware that [his claim raised] federal constitutional issues." *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007).

the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014). "And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Id.*

The Supreme Court has repeatedly cautioned lower courts against framing its decisions at "a high level of generality." *Nevada v. Jackson*, 569 U.S. 505, 512 (2013); *see also Brown v. Davenport*, 596 U.S. 118, 136 (2022) (noting that "holdings that speak only at a high level of generality" "cannot supply a ground for relief" under AEDPA). If the rule were otherwise, lower courts "could transform even the most imaginative extension of existing case law into clearly established federal law," thus "collapsing the distinction between an *unreasonable* application of federal law and what a lower court believes to be an *incorrect* or *erroneous* application of federal law." *Jackson*, 569 U.S. at 512. In other words, AEDPA "provides a remedy for instances in which a state court unreasonably *applies* [Supreme Court] precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error." *White*, 572 U.S. at 426; *see also Loggins v. Thomas*, 654 F.3d 1204, 1222 (11th Cir. 2011) ("Because implications are not actual holdings, the implications of Supreme Court decisions cannot clearly establish federal law for § 2254(d)(1) purposes any more than dicta can.").

Here, Supreme Court precedent "give[s] no clear answer to the question presented"—namely, whether a defendant's negotiated plea is involuntary or unknowing simply because he is unaware of the option of entering an open plea. *Wright v. Van Patten*, 552 U.S. 120, 126 (2008). Mr. LaRocca cites *Boykin* and *Alford*, but those decisions do not "confront the specific question presented by this case." *Woods*, 575 U.S. at 317. *Boykin*

6

held that a guilty plea is valid only if the record contains "an affirmative showing that it was intelligent and voluntary." 395 U.S. at 242. The Supreme Court explained that, to "insulate[]" convictions "from attack," a trial court should "conduct an on the record examination of the defendant which should include, *inter alia*, an attempt to satisfy itself that the defendant understands the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged[,] and the permissible range of sentences." *Id.* at 244 n.7. The defendant in *Boykin* was denied due process because "the record was inadequate to show that [he] had intelligently and knowingly pleaded guilty"— indeed, "[s]o far as the record show[ed], the judge asked no questions of [the defendant] concerning his plea, and [he] did not address the court." *Id.* at 239, 241. Nothing in *Boykin* clearly establishes that a negotiated plea is involuntary or unknowing simply because the defendant is unaware of the option of pleading open.

The same is true of *Alford*. There, the Supreme Court held that "[a]n individual accused of [a] crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Alford*, 400 U.S. at 37. In reaching that conclusion, the Court noted that "[t]he standard [for the determining the validity of a guilty plea] was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id.* at 31. But this "general proposition" is "far too abstract to establish clearly the specific rule [Mr. LaRocca] needs." *Lopez*, 574 U.S. at 6; *see also Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1288 (11th Cir. 2012) ("The Supreme Court has reiterated, time and again, that, in the absence

of a clear answer—that is, a holding by the Supreme Court—about an issue of federal law, we cannot say that a decision of a state court about that unsettled issue was an unreasonable application of clearly established federal law.").

*Boykin* and *Alford* aside, Mr. LaRocca does not cite—and this Court cannot locate—any Supreme Court precedent addressing the validity of a negotiated plea entered without a defendant's knowledge of the option of pleading open. And while "circuit precedent does not constitute 'clearly established Federal law'" under AEDPA, Mr. LaRocca likewise fails to point to any federal circuit decisions addressing the question presented. *Glebe v. Frost*, 574 U.S. 21, 24 (2014) (quoting 28 U.S.C. § 2254(d)(1)). Nor is the Court aware of any such precedent.

Moreover, at least one state supreme court has rejected the argument that a negotiated plea is invalid unless a defendant knows of his right to plead open. In *Grigsby v. Commonwealth*, the defendant "allege[d] only one deficiency in his plea that could render it unknowing: that he was not informed of his right to enter a blind plea and have the jury sentence him, instead of having the court sentence him according to his signed plea agreement."[2] 302 S.W.3d 52, 56 (Ky. 2010). The Kentucky Supreme Court acknowledged that "the record d[id] not show [the defendant] was specifically informed that he could enter a blind guilty plea." *Id.* The court nonetheless held that the negotiated plea "satisfie[d] *Boykin*" because the defendant "had a full understanding of what the plea connote[d] and

---

[2] A "blind plea" is "a plea without an agreement." *Hamilton v. Allbaugh*, 709 F. App'x 525, 526 (10th Cir. 2018).

8

its consequences." *Id.* Specifically, the defendant knew "he was waiving his constitutional rights associated with proceeding to trial and that he would be sentenced to twenty years in prison without the possibility of parole." *Id.* The court also noted that the defendant failed to "offer any authority requiring the trial court to inform him of his right to enter a blind guilty plea and demand jury sentencing in lieu of being sentenced according to his signed plea agreement." *Id.* Thus, the court concluded that, because the defendant's plea "was knowing and voluntary" under *Boykin*, "there [was] no need to vacate his guilty plea, conviction, or sentence."[3] *Id.* at 57.

Because the "precise contours" of *Boykin* and its progeny "remain unclear," the state court "enjoy[ed] broad discretion in [its] adjudication" of Mr. LaRocca's claim. *Woods*, 575 U.S. at 318. To overturn that decision, Mr. LaRocca must "show that the state court's ruling on [his] claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). He cannot satisfy this "high bar." *Woods*, 575 U.S. at 316.

The signed plea agreement and the plea colloquy establish Mr. LaRocca's understanding that (1) he faced a "maximum sentence" of "life in prison with no parole" if convicted of armed burglary; (2) a guilty plea would result in the waiver of several

---

[3] At least one federal district court has reached the same conclusion on similar facts. *See McBride v. United States*, No. 3:10-cr-012, 2013 WL 1786556, at *13 (S.D. Ga. Mar. 28, 2013) ("The record is . . . clear as to the intelligent and voluntary entry of Petitioner's guilty plea, and Petitioner fails to show otherwise by asserting that his attorney failed to inform him of the option to enter an 'open' guilty plea."), *adopted by* 2013 WL 1786552 (S.D. Ga. Apr. 25, 2013).

constitutional rights, including the right to a jury trial; and (3) in exchange for his plea, the prosecution would recommend a total sentence of twenty years' imprisonment. (Doc. 13-2, Ex. 1, at 32, 56-61). Mr. LaRocca also indicated that counsel had "explained" "[t]he essential elements of the charge(s) to which [he was] pleading." (*Id.* at 32). In these circumstances, a "fairminded jurist[]" could conclude that Mr. LaRocca's negotiated plea was knowing and voluntary even if he was never informed of the option of pleading open. *Harrington*, 562 U.S. at 101; *see also Voils v. Hall*, 151 F. App'x 793, 795 (11th Cir. 2005) (holding that state court reasonably concluded that guilty plea was "knowing and voluntary" under *Boykin* because petitioner "understood (1) the nature of the charges, (2) his right to a jury trial, (3) the rights he was waiving by pleading guilty, and (4) the maximum sentence for the charges to which he was pleading guilty"). AEDPA thus forecloses relief on Mr. LaRocca's claim.

In short, the Supreme Court has not provided "a clear answer" about the validity of a guilty plea entered without knowledge of the possibility of pleading open. *Reese*, 675 F.3d at 1288. As a result, this Court cannot say that the state court's rejection of Mr. LaRocca's claim was contrary to, or an unreasonable application of, clearly established federal law. For that reason, Mr. LaRocca is not entitled to relief.[4]

---

[4] Mr. LaRocca separately contends that "AEDPA deference does not apply" because "the state court unreasonably determined the facts relevant to [his] claim." (Doc. 2 at 11). This argument is meritless. The only "fact" to which Mr. LaRocca objects is the state court's determination that his plea was voluntarily entered. (*Id.*) The "voluntariness of a guilty plea is a question of law." *United States v. Brown*, 117 F.3d 471, 474 (11th Cir. 1997). And Mr. LaRocca does not show that the state court unreasonably determined any facts relevant to its legal conclusion that the plea was knowing and voluntary.

### III. Conclusion

Accordingly, the Court **ORDERS**:

1. Mr. LaRocca's petition (Doc. 1) is **DENIED**.

2. The **CLERK** is directed to enter judgment against Mr. LaRocca and to **CLOSE** this case.

3. Mr. LaRocca is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, Mr. LaRocca must show that reasonable jurists would find debatable both the merits of the underlying claim and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Mr. LaRocca has not made the requisite showing. Because Mr. LaRocca is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on February 5, 2024.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE